IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:15-CV-00016-FL

EQUAL EMPLOYMENT OPPORTUNITY )
COMMISSION, )
)
    Plaintiff, )
)
  v. )            ORDER
)
)
TRIANGLE CATERING, LLC, )
)
    Defendant. )

This matter is before the court on the parties' cross-motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56. (DE 65, 67). Also before the court is plaintiff's motion to strike, made pursuant to Rules 12(f) and 56(c)(2). (DE 77). The motions have been fully briefed and, in this posture, the issues raised are ripe for ruling. For the following reasons, the court grants in part and denies in part plaintiff's motion for summary judgment, denies plaintiff's motion to strike, and grants in part and denies in part defendant's motion.

## BACKGROUND

On January 13, 2015, plaintiff, the United States Equal Employment Commission ("EEOC") commenced this action against defendant on behalf of Michael Reddick, Jr. ("Reddick"), alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e et seq. Plaintiff asserts two claims against defendant. Specifically, plaintiff alleges that

defendant failed to accommodate Reddick's religious belief of wearing a head covering ("crown") and that defendant unlawfully discharged Reddick on the basis of his religion, Rastafarian.

Prior to the commencement of this action, Reddick filed a Charge of Discrimination against defendant with plaintiff ("EEOC charge"). On December 19, 2013, plaintiff mailed to defendant a Notice of Charge of Discrimination ("Notice"). However, plaintiff incorrectly recorded defendant's address and defendant did not receive the Notice. Plaintiff resent the Notice to defendant on April 7, 2014, which defendant received on April 10, 2014. On April 20, 2014, defendant submitted a written response to allegations set forth in the EEOC charge, prepared by its General Manager, Latrisha Jenkins ("Jenkins"). After retaining legal counsel, defendant submitted an additional response on August 18, 2014.

On September 30, 2014, plaintiff issued a Letter of Determination ("Letter") informing defendant that plaintiff had reasonable cause to believe that on or around December 5, 2013, defendant violated Title VII by failing to accommodate Reddick's religious beliefs and discharging him on the basis of his religion. On November 3, 2014, the parties participated in a conciliation conference,[1] but were unable to reach a resolution. This action followed.

Following a period of contentious discovery, on August 31, 2016, defendant filed the instant motion for summary judgment, accompanied by a statement of material facts, appendix thereto, and memorandum of law (DE 67, 68, 69). Defendant relies upon the deposition of Reddick, as well as the depositions of several of defendant's employees,[2] the declaration of Debbie Carrara,

---

[1] Conciliation is a voluntary process whereby parties attempt to resolve employment discrimination charges informally prior to litigation. What You Should Know: The EEOC, Conciliation, and Litigation, E.E.O.C., https://www.eeoc.gov/eeoc/newsroom/wysk/conciliation_litigation.cfm [https://perma.cc/2NSK-MS6J].

[2] In particular, defendant relies upon the depositions of Michele Aldred (M. Aldred), Jenkins, Dodd Aldred ("D. Aldred"), Eric Whitfield ("Whitfield"), and Blanca Ramirez ("Ramirez").

business manager of defendant's insurance company, and the affidavit of defense counsel John D. Cole ("Cole").

That same date, plaintiff filed the instant partial motion for summary judgment on two affirmative defenses, accompanied by a statement of material facts, appendix thereto, and memorandum of law. (DE 65, 66, 70). In support of its motion, plaintiff also relies upon the depositions of Reddick, M. Aldred, and Jenkins, as well as declarations of EEOC Deputy Director, Thomas Colclough ("Colclough"), the Notice, defendant's position statement dated August 19, 2014, a document titled "Michael Reddick Notice of Termination," and Reddick's paycheck from defendant. Plaintiff also moved to strike certain evidence relied upon by defendant in support of its motion for summary judgment. Defendant responded in opposition on October 24, 2016. (DE 88).

## STATEMENT OF FACTS

The facts viewed in the light most favorable to plaintiff may be summarized as follows.[3] Defendant is a full-service catering company that operates throughout the Research Triangle area. (DE 75 ¶ 1). In November 2013, Reddick responded to defendant's advertisement for a full-time delivery driver. (Id. ¶ 2). On his application, Reddick indicated that he had never been convicted of a crime, despite having an extensive criminal history. (Id. ¶¶ 3–5). After Reddick submitted his application, he interviewed for the position. (Id. ¶ 8). During his interview, Reddick did not wear religious headwear or discuss a need to wear religious headwear. (Id. ¶¶ 8–9). Following the interview, defendant hired Reddick as a delivery driver. (Id. ¶ 10). As a delivery driver, Reddick was responsible for traveling to and setting up events at various locations outside defendant's primary offices. (Id. ¶ 12).

_____

[3]The statement of facts are viewed in the light most favorable to plaintiff for the purposes of defendant's motion for summary judgment. Facts as pertinent to plaintiff's motion for summary judgment are discussed further herein.

Reddick began working for defendant on December 4, 2013. (Id. at ¶ 13). That day, Reddick arrived to work at approximately 5:45 a.m. and spent most of the day shadowing another employee, Ramirez, at a catering event on the campus of North Carolina State University. (Id. ¶¶ 13–14). The next day, December 5, 2013, Reddick reported to work at approximately 6:00 a.m. (Id. ¶ 27). Shortly thereafter, Reddick encountered defendant's co-owner and executive director, M. Aldred, who told Reddick to remove his hat. (Id. ¶ 28). Reddick informed M. Aldred that he wore the hat for religious purposes. (Id. ¶ 29). In response, M. Aldred asked Reddick about his religion, and Reddick indicated that he was Rastafarian. (Id. ¶ 31). According to plaintiff, shortly thereafter, M. Aldred sent Reddick home from work early and told Reddick that she and Jenkins needed to discuss what to do. (Id. ¶ 114).

On December 6, 2013, Reddick returned to work at approximately 6:00 a.m. (Id. ¶ 45). "At the time of Reddick's arrival, [the office] was in the midst of a busy breakfast delivery shift and [no one] was . . . able to speak to [Reddick]." (Id. ¶ 46). Accordingly, Jenkins instructed Reddick to return at 11:00 a.m. (Id. ¶ 47). At that time, Jenkins also decided to terminate Reddick. (Id. ¶ 48). After making this decision, Jenkins told M. Aldred she was terminating Reddick and created a document titled "Michael Reddick Notice of Termination." (Id. at ¶ 52). Jenkins asked defendant's employee, Eric Whitfield ("Whitfield"), to carry out the termination. (Id. ¶ 53).

Sometime after Reddick returned to work on December 6, 2013, Reddick met with Whitfield and Sales and Event Coordinator, Robin Gromberg. (DE 75 ¶ 125). At the meeting, Whitfield told Reddick he was being terminated and gave Reddick a copy of the Notice of Termination. (Id. at ¶¶ 128, 139–140). Whitfield also presented Reddick with a paycheck covering the time he worked on December 4 and December 5, 2013. (Id. ¶ 57). No taxes were taken out of Reddick's paycheck. (Id.

4

¶ 58). Reddick recorded the termination meeting on his cell phone. (DE 65-6 at 17–18). Following the meeting, Reddick drove to the EEOC's Raleigh office and filed a charge of discrimination alleging Title VII violations by defendant. (Id.).

## DISCUSSION

A.     Motion to Strike

Plaintiff moves to strike certain exhibits attached to defendant's statement of material facts supporting its motion for summary judgment. Specifically, plaintiff seeks to exclude an attachment to the affidavit of defense counsel Cole, which contains interview notes prepared by Colclough during Reddick's interview with the EEOC. (DE 68-10). Plaintiff contends that the interview notes, and statements contained therein, are inadmissible hearsay because they are offered against plaintiff by defendant to prove that Reddick believed himself to be an independent contractor. Plaintiff further contends the interview notes cannot be authenticated properly. Defendant counters by arguing that the notes are part of the EEOC's investigatory record, thus exempting them from the rule against hearsay.

Federal Rule of Evidence 801(c) defines hearsay as a declarant's out of court statement introduced for the truth of the matter asserted therein. Fed. R. Evid. 801(c). Under Rule 801, a statement is not hearsay if:

> The statement is offered against an opposing party and: (A) was made by the party in an individual or representative capacity; (B) is one the party manifested that it adopted or believed to be true; (C) was made by a person whom the party authorized to make a statement on the subject; [or] (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed[.]

Fed. R. Evid. 801(d)(2)(A)-(D).

5

Here, there are two levels of potential hearsay– the interview notes as transcribed by Colclough and the statements contained therein regarding assertions Reddick made during the interview. As to the first level of hearsay, plaintiff concedes that the transcribed interview notes are admissible as "a business record maintained in the normal course of EEOC's operation." (DE 78 at 4); see Fed. R. Evid. 803(6). The interview notes are also excluded from the definition of hearsay as statements made by plaintiff's agent. Fed. R. Evid. 801(d)(2)(D).

With regard to statements contained within the interview notes, the issue is whether a charging party on whose behalf the EEOC brings a civil enforcement action under Title VII is an "opposing party" for purposes of Rule 801(d)(2). While the Fourth Circuit has not addressed the issue, at least one court has found statements made by the charging party in an EEOC enforcement action to be admissible as statements of an opposing party under Rule 801(d)(2). See E.E.O.C. v. Placer ARC, No. 2:13-CV-0577-KLM-EFB, 2016 WL 74032, at *2 (E.D. Cal. Jan. 7, 2016). In E.E.O.C. v. Placer ARC, the court reasoned that although the charging party was not a party to the civil action, she was not an "ordinary witness but rather a 'witness plus' on whose statements [the defendant] should be entitled to rely on . . . given the traditional justifications for the hearsay rules and its exclusions." Id. Upon careful consideration, the court is inclined to subscribe to this analysis. For the reasons given, the interview notes are received into evidence, where they also are properly authenticated.

A document may be authenticated by testimony of a witness establishing that the document is what it is claimed to be, through the use of distinctive characteristics, or through evidence about public records. Fed. R. Evid. 901(b)(1), (4) & (7). Here, defendant submitted an affidavit of defense counsel, which confirms that plaintiff provided the interview notes to defendant as part of

6

the EEOC's investigatory file. (DE 68-10). Plaintiff has also confirmed that the contents of the file it produced to defendant constitute the "full and complete investigatory file [of all non-privileged documents] regarding Reddick's Charge of Discrimination." (DE 88-2 at 3). Accordingly, the interview notes are properly authenticated under Rule 901(b)(1) and (7) as true and correct copies of the notes Colclough prepared during the EEOC's investigation of Reddick's claims.

For the foregoing reasons, no hearsay problem exists here, where the interview notes, and statements contained therein, are admissible under Rule 801(d)(2). Additionally, since defendant provided an affidavit sufficiently authenticating the notes as a document received from the EEOC, the same has been properly authenticated under Rule 901(b). Having found the notes to be admissible on these bases, the court need not address the parties' alternative arguments. Consequently, plaintiff's motion to strike is denied.

B. Motion for Summary Judgment

1. Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

7

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. Similarly, "[c]redibility determinations . . . are jury functions, not those of a judge." Id. at 255. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." Id.; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "a reasonable jury could reach only one conclusion based on the evidence," or when "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

2. Analysis

a. Employment Status

As a threshold matter, defendant asserts that it is entitled to summary judgment on the basis that Reddick was not defendant's employee. Plaintiff also moves for summary judgment on this affirmative defense.

8

It is well-established that Title VII does not protect independent contractors. See e.g., Cilecek v. Inova Health System Servs., 115 F.3d 256, 259 (4th Cir. 1997). Furthermore, whether an individual is an employee or an independent contractor is a question of law. Id. at 261–63. In determining whether an individual is an employee, the Fourth Circuit follows the hybrid approach, which combines elements of both the common law and "economic realities" tests. See Haavistola v. Cmty. Fire Co. of Rising Sun, Inc., 6 F.3d 211, 220 (4th Cir. 1993); Garret v. Phillips Mills, Inc., 721 F.2d 979, 981 (4th Cir. 1983); see also Butler v. Drive Auto. Indus. of Am., Inc., 793 F.3d 404, 413 (4th Cir. 2015). The hybrid approach requires courts to consider several factors, including:

> (1) the kind of occupation . . .; (2) the skill required in the particular occupation;
> (3) whether the "employer" or the individual furnishes the equipment used and the
> place of work; (4) the length of time during which the individual has worked; (5)
> the method of payment . . .; (6) the manner in which the work relationship is
> terminated . . .; (7) whether annual leave is afforded; (8) whether the work is an
> integral part of the [employer's] business . . .; (9) whether the worker accumulates
> retirement benefits; (10) whether the "employer" pays social security taxes; and
> (11) the intention of the parties.

Haavistola, 6 F.3d at 222 n.4 (citing Garret, 721 F.2d at 982). "[T]he parties' beliefs regarding the nature of the employment relationship . . . [is also] significant." Farlow v. Wachovia Bank of N.C., N.A., 259 F.3d 309, 313 (4th Cir. 2001) (internal quotations omitted). While no one factor is dispositive, courts often accord great weight to the degree of control, the parties' actual understanding of the employment relationship, and the parties' financial relationship. Id. at 313–315.

On these facts, a genuine issue of material fact exists as to whether or not Reddick was defendant's employee. Plaintiff contends that undisputed evidence of record establishes that Reddick was defendant's employee. In support of its position, plaintiff notes that Reddick's job as a delivery driver is essential to defendant's catering business, defendant controlled almost every

9

aspect of Reddick's employment, including his job assignments and work schedules, defendant provided Reddick with a mentor, defendant provided all equipment used by Reddick, and defendant could terminate Reddick at any time, without notice or explanation. Plaintiff relies on Reddick's testimony, Jenkins' deposition testimony, and M. Aldred's deposition testimony to show the parties' mutual understanding that defendant hired Reddick as an employee. For example, in his deposition, Reddick testified that he was not hired as an independent contractor. (DE 65-6 at 5). Additionally, at the time of his employment, Reddick did not sign a contractor agreement, which defendant allegedly required all independent contractors to execute. (DE 65-7 at 2; DE 65-5 at 62–63).

In opposition, defendant notes that undisputed evidence shows that Reddick only worked for only one day and an hour, defendant did not provide Reddick with annual leave or retirement benefits, Reddick received only one paycheck, and Reddick did not pay social security taxes. Defendant relies on interview notes prepared by Colclough during Reddick's interview with the EEOC as well as Jenkins' deposition to prove that the parties mutually understood that defendant hired Reddick as an independent contractor. For example, in her deposition, Jenkins testified that Reddick did not receive a new employee offer letter , did not go through new employee orientation, and did not receive an employee handbook. (DE 80-2 at 3–5). Additionally, during his interview with the EEOC, Reddick allegedly asserted that defendant hired him as an independent contractor. (DE 68-10 at 3).[4] Lastly, defendant notes that Reddick understood that he was only hired as a delivery driver for a trial period during the holiday season. (DE 80 ¶ 36; DE 68 ¶ 11).[5]

---

[4] Reddick disputes ever telling Colclough that he was hired as an independent contractor. (DE 65-6 at 6).

[5] The parties dispute this fact. Reddick concedes that he was hired as a delivery driver on a trial basis, but asserts that this probationary period was mere formality. (DE 70 ¶ 36). Reddick contends that the parties intended him to become a permanent, full-time employee following the successful completion of the probationary period. (Id.).

However, in a supplemented response to Reddick's EEOC charge, defendant, through counsel, acknowledged that during the time of Reddick's employment, defendant was unsure "whether [Reddick] should be properly classified as an independent contractor or as an employee because [at that time] it . . . had not defined all . . . [Reddick's] duties." (DE 65-5 at 5). Defense counsel further noted that "in classifying . . . Reddick as an independent contractor, [defendant], . . . was operating under the misconception that an individual employed during . . . [a] trial period . . . is most appropriately classified as an independent contractor." (Id.).

Given the materiality of these disputed facts, summary judgment is not proper on the discrete issue of whether or not Reddick was defendant's employee. Having established that summary judgment is not proper on this basis, the court turns now to the merits of the remaining part of defendant's motion.

>       b.      Failure to Accommodate

Title VII makes it unlawful for an employer "to discriminate against an individual with respect to . . . compensation, terms, conditions, or privileges of employment because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). Under Title VII, the term " 'religion' . . . 'includes all aspects of religious observance and practice, as well as belief . . . .'" E.E.O.C. v. Abercrombie & Fitch Stores, Inc., 135 S. Ct. 2028, 2030 (2015) (citing 42 U.S.C. § 2000e(j)). Plaintiff alleges that defendant violated Title VII by failing to accommodate Reddick's religious belief of wearing a crown and discharging him on the basis of his religion, Rastafarian. The court turns first to plaintiff's failure to accommodate claim.

As a preliminary matter, defendant contends that because Reddick's charge of discrimination does not allege a claim for failure to accommodate, the court lacks jurisdiction over it. "In any

subsequent lawsuit alleging unlawful employment practices[,] . . . a federal court may only consider those allegations included in the EEOC charge." Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 407 (4th Cir. 2013). Generally, claims filed in subsequent lawsuits that "exceed the scope of the EEOC charge . . . are procedurally barred." Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005) (internal quotations omitted). However, claims exceeding the scope of the initial EEOC charge may be advanced in a subsequent civil suit if such claims are "reasonably related to the EEOC charge and . . . expected to follow from a reasonable administrative investigation [of the charge]." Smith v. First Union Nat'l Bank, 202 F.3d 234, 247–48 (4th Cir. 2000) (citing Chisholm v. United States Postal Serv., 665 F.2d 482 (4th Cir. 1981)); see also E.E.O.C. v. Gen. Elec. Co., 532 F.2d 359, 367 (4th Cir. 1976) ("[P]roceedings by the EEOC and the judicial suit may be as broad as the facts developed in a reasonable investigation of the charge will warrant."). While courts "may only look to the charge filed with [the EEOC]" in determining what claims plaintiff properly alleged before it, courts "must . . . construe [those charges] with utmost liberality." Balas, 711 F.3d at 408 (internal quotations omitted).

Plaintiff's failure to accommodate claim is reasonably related to the charge Reddick filed with the EEOC. Reddick's EEOC charge alleges that he was discharged on a religious basis. Investigation of this charge established probable cause that defendant also failed to accommodate Reddick's religious practices. Specifically, because Reddick's notice of termination mentions the exchange he had with M. Aldred regarding his religious need to wear a crown, the failure to accommodate claim is reasonably related to, and "developed in the reasonable investigation" of Reddick's EEOC charge. Gen. Elec. Co., 532 F.2d at 367.

In support of a contrary position, defendant cites Novitsky v. Am. Consulting Eng'rs, LLC, 196 F.3d 699, 701 (7th Cir. 1999). In Novitsky the Seventh Circuit affirmed summary judgment in favor of an employer on the plaintiff's failure to accommodate claim on the basis that the EEOC charge "lack[ed] any allegation of failure to accommodate." Id. at 700. In reaching its conclusion, the court reasoned that "[a] charge alleging discriminatory discharge . . . would not naturally lead to an investigation into the employer's [alleged failure to accommodate]." Id. at 702. While failure to accommodate claims are distinct from discriminatory discharge claims, given that Reddick's failure to accommodate claim was developed by facts discovered in the reasonable investigation of Reddick's discriminatory discharge claim, this case is distinguishable from Novitsky. See Gen. Elec. Co., 532 F.2d at 367 ("[P]roceedings by the EEOC and the judicial suit may be as broad as the facts developed in a reasonable investigation of the charge will warrant.").

Defendant also contends that the court lacks jurisdiction over plaintiff's failure to accommodate claim on the basis that plaintiff failed to properly serve defendant with notice of Reddick's charge within the required 10 day period. See 42 U.S.C. §§ 2000e-5(b) and (e). Here, plaintiff sent notice of Reddick's EEOC charge to defendant on December 19, 2013. However, due to plaintiff's error, defendant did not receive the notice until April 10, 2014. Defendant contends this lengthy delay "prejudiced [it] with the potential of increased accumulation of damages and costs, and the difficulty in the preservation of evidence and documents." (DE 79 at 4). However, because defendant has not made a showing of substantial prejudice or bad faith, plaintiff's claim is not barred. See e.g., E.E.O.C. v. Shell Oil Co., 466 U.S. 54, 66 n.16 (1984) ("[W]hen the EEOC . . . fail[s] to notify the accused employer within 10 days of the filing of the charge, the courts have uniformly held that, at least in absence of proof of bad faith on the part of the Commission or prejudice to employer,

the result is not to bar a subsequent suit . . . by the Commission."); see also E.E.O.C. v. U.S. Fidelity

& Guaranty Co., 420 F. Supp. 244, 249–50 (D. Md. 1976) (allowing a claim to proceed where notice

of it was served 10 months after the charge was filed), aff'd 538 F.2d 324 (4th Cir. 1976). Therefore,

the court has jurisdiction over plaintiff's failure to accommodate claim.

The Supreme Court recently asserted the standard for failure to accommodate claims in

Abercrombie, holding that a plaintiff "need only show that his need for an accommodation was a

motivating factor in the employer's decision," not that the employer had knowledge of this need.[6]

135 S. Ct. at 2032–33 ("[Section] 2000e-2(a)(1) does not impose a knowledge requirement.").[7]

In accordance with Abercrombie, to establish a prima facie case for failure to accommodate,

a plaintiff must adduce sufficient evidence that he: "(1) . . . has a bona fide religious belief or practice

that conflicts with an employment requirement and (2) the need for an accommodation of that

religious belief or practice served as a motivating factor in the employer's adverse employment

action." Abeles v. Metro. Wash. Airports Auth., __ F. App'x ___, 2017 WL 374741, at *5 (4th Cir.

Jan. 26, 2017) (citing Chalmers, 101 F.3d at 1019; Abercrombie, 135 S. Ct. at 2033).

---

[6] The Abercrombie Court notes that "[a] request for accommodation, or the employer's certainty that [a religious] practice exists, may make it easier to infer motive, but is not a necessary condition for liability." 135 S. Ct. at 2033. However, the Court does not address whether "the motive requirement . . . [requires that] the employer at least suspect[] that the practice in question is a religious practice[.]" Id. at 2033 fn.3. Here, where defendant knew that Reddick wore a crown for a religious purpose, resolution of this question does not affect the court's analysis. (DE 75 ¶¶ 29–31).

[7] In its motion for summary judgment defendant relies on prior case law, which required a plaintiff to show that he "informed [his] employer that [his] religious needs conflicted with an employment requirement," and that he "asked the employer to accommodate his religious needs," as part of its prima facie case. (DE 69 at 11) (citing Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1019 (4th Cir. 1996)). When questioned by plaintiff about its reliance on prior case law, defendant suggests that even under Abercrombie, plaintiff has not produced evidence sufficient to survive summary judgment, because defendant "had no knowledge of Reddick's religion or religious practice prior to making [its] decision to discharge him." (DE at 5). As Abercrombie instructs however, defendant's knowledge is not required. See Abercrombie, 135 S. Ct. at 2033 ("[Section] 2000e-2(a)(1) does not impose a knowledge requirement.").

14

First, defendant contends that because Reddick's actions are inconsistent with his purported beliefs, he does not hold a bona fide religious belief. For example, defendant notes that despite claiming to need to wear a crown at all times, Reddick did not wear a crown to his interview.

A bona fide religious belief is a belief that is "sincerely held and . . . in [the believer's] own scheme of things, religious." United States v. Seeger, 380 U.S. 163, 185 (1965). "[A]ssessing the bona fides of an employee's religious belief is a delicate business." E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico, 279 F.3d 49, 57 (1st Cir. 2002) (citing Prontos v. Volkswagen of Am., Inc., 797 F.2d 129, 137 (3d Cir. 1986); Phillbrook v. Ansonia Bd. of Educ., 757 F.2d 476, 481 (2d Cir. 1985)). The "'[s]incerity analysis is exceedingly amorphous, requiring the factfinder to delve into the [employee's] most veiled motivations and vigilantly separate the issue of sincerity from the factfinder's perception of the religious nature of the [employee's] beliefs.'" Id. (quoting Patrick v. LeFevre, 745 F.2d 153, 157 (2d Cir. 1984)).

While "[e]vidence of non-observance is relevant on the question of sincerity," Reed v. Faulkner, 842 F.2d 960, 963 (7th Cir. 1988), "'a sincere religious believer doesn't forfeit his religious rights merely because he is not scrupulous in his observance.'" Pin Zhuang Chen v. Holder, 583 F. App'x 164, 168–69 (4th Cir. 2014) (quoting Singh v. Holder, 720 F.3d 635, 644 (7th Cir. 2013)). Indeed, in the First Amendment context, it is well-settled that "[r]eligious practices need not be uniform to merit . . . protection." Dettmer v. Landon, 799 F.2d 929, 932 (4th Cir. 1986); see also Thomas v. Ind. Review Bd., 450 U.S. 707, 714 (1981) ("[R]eligious beliefs need not be acceptable logical, consistent, or comprehensible to others to be entitled to protection under the First Amendment.").

15

The undisputed facts show that Reddick has been a practicing Rastafarian for over 15 years. (DE 75-3 ¶ 1).  According to Reddick, Rastafarianism is "a monotheistic faith, believing in one God, naturalness, peace, love, harmony, justice and equality."  (DE 68-22 at 19 ¶ 16–18).  As a practicing Rastafarian, Reddick believes that "[he] must keep [his] head covered [with a turban, crown or tam]." (DE 75-3 ¶ 3).  Reddick's practice of wearing a religious head covering also conflicts with defendant's dress code, which prohibits workers from wearing hats, unless they are working in the kitchen.  (DE 75-6 at 50–51).

   To explain inconsistencies between Reddick's purported religious beliefs and his practice thereof, plaintiff offers that  Reddick did not wear his crown to his interview with defendant because "he noticed how people react[ed] to his religious crown" and feared that wearing his crown would prevent him from getting the job.  (DE 75 ¶ 104).  Because "he had been unemployed so long," Reddick testified that he "was willing to try anything necessary to get a job." (Id.).  Consequently, resolution of whether Reddick holds a bona fide religious belief largely "depend[s] on the factfinder's assessment of [Reddick's] credibility."  Union Independiente, 279 F.3d at 56 (internal citations omitted).  Since "[c]redibility issues such as the sincerity of an employee's religious beliefs are quintessential fact questions," there exists a genuine issue of material fact as to whether Reddick holds a bona fide religious belief.  Id. Accordingly, plaintiff's failure to accommodate claim will not be dismissed on this basis.  Id. (noting that determinations regarding the sincerity of an employee's religious belief, "should be reserved for the factfinder at trial, not for the court at summary judgment").

   To be sure, however, substantial questions regarding the sincerity of Reddick's religious beliefs exist.  A judge generally cannot disregard personal testimony on credibility grounds.  See

16

Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991) ("It is not [the district court's job] to weigh the evidence, to count how many affidavits favor the plaintiff and how many oppose him, or to disregard stories that seem hard to believe.") (citing Anderson, 477 U.S. at 249). While Reddick's purported inconsistencies are insufficient to warrant entry of summary judgment in defendant's favor, they will be relevant to determining whether Reddick's beliefs are sincere. See Reed, 842 F.2d at 963. No doubt defendant will offer evidence of inconsistencies, together with Reddick's reputation for untruthfulness, to influence the jury's assessment of Reddick's credibility at trial.

Second, defendant contends that plaintiff has not provided sufficient evidence to establish that Reddick's need for an accommodation was a motivating factor in defendant's termination decision. Here, the facts viewed in the light most favorable to plaintiff establish that Reddick was sent home from work on December 5, 2013, after telling M. Aldred about his need to wear religious head wear. (DE 75 ¶ 35). According to plaintiff, at the time M. Aldred sent Reddick home, she told him that she and Jenkins needed to "decide[] what to do about [his] religious crown." (DE 75-3 ¶ 31) ; (See also DE 75-2 at 43–44; DE 75 ¶ 36). Shortly after Reddick returned to work on December 6, 2013, Jenkins decided to terminate him. Sometime thereafter, Jenkins told M. Aldred she was terminating Reddick and asked Whitfield to carry the termination out. When Jenkins spoke to Whitfield about Reddick's termination, the two discussed Reddick's crown. (DE 75-10 at 34–35).

During Reddick's termination meeting Whitfield discussed Reddick's religion, (DE 75-3 ¶¶ 12–17), and told Reddick that people were thrown off by the fact that Reddick did not wear a crown during his interview. (DE 75-10 at 6–7). Whitfield also gave Reddick a Notice of Termination. The Notice of Termination states that Reddick was discharged for "the confrontational and disrespectful way in which he handled the 'hat' situation." (DE 68-2 at 38). However, in her deposition, M.

Aldred testified that "[n]othing about [her] conversation with [Reddick] was confrontational . . . [o]r disrespectful." (DE 75-7 at 8). The notice of termination also asserts that Reddick "badmouth[ed] a member of [defendant's] management team," and did not follow simple instructions. (DE 68-2). Reddick, however, denies badmouthing any member of defendant's management team and/or failing to follow instructions. (DE 75 ¶ 47–48; DE 75-3 ¶ 32).

Viewed in the light most favorable to plaintiff, the temporal proximity between Reddick's interaction with M. Aldred and his termination, together with the Notice of Termination's reference to the "hat" situation and the inconsistencies between the Notice of Termination and M. Aldred's testimony regarding the "hat" situation, creates a reasonable inference that Reddick's need for a religious accommodation was a motivating factor in defendant's termination decision. See Abercrombie, 135 S. Ct. at 2033 (suggesting that an employer's motive can be inferred from the circumstances). Therefore, plaintiff has adduced sufficient evidence to establish a prima facie case for failure to accommodate.

In any event, defendant argues that it is still entitled to summary judgment on plaintiff's failure to accommodate claim on the basis that it did accommodate Reddick. Alternatively, defendant suggests that accommodating Reddick's religious practice would have resulted in undue hardship.

First, defendant contends that it did accommodate Reddick's religious beliefs, where no one forced Reddick to remove his religious headwear. This argument, however, is unconvincing. Although no one forced Reddick to remove his headwear, M. Aldred did ask him to remove his crown. (DE 75 ¶ 28). According to plaintiff, immediately after Reddick told M. Aldred that he wore the crown for religious purposes, she dismissed him from work and told him that she needed to discuss what to do with Jenkins. (Id. ¶¶ 35–36). When Reddick returned the next day, Jenkins

decided to terminate him. Accordingly, where defendant made no effort to accommodate Reddick's beliefs prior to his termination, defendant did not reasonably accommodate Reddick's religious beliefs. See E.E.O.C. v. Ithaca Indus., Inc., 849 F.2d 116, 119 (4th Cir. 1988) (en banc) (finding that an employer violated Title VII where it "made no effort to accommodate" an employee).

In the alternative, defendant argues that summary judgment is proper because it has satisfied its burden under the undue hardship doctrine. Ordinarily, even if an employee can establish a prima facie case for failure to accommodate, an employer will not be liable if the "accommodation was not provided because it would have caused [the employer] an undue hardship." E.E.O.C. v. Firestone Fibers & Textiles Co., 515 F.3d 307, 312 (4th Cir. 2008) (internal quotations and citations omitted). An accommodation causes undue hardship if "it would have resulted in more than a de minimus cost to the employer." Id.

Defendant suggests that accommodating Reddick's religious practice would have resulted in undue hardship because Reddick's headwear violated applicable health codes and regulations. This topic appears undeveloped in the record now before the court. Defendant cites no health codes, rules, or regulations that would be violated by allowing Reddick to wear his religious head wear.[8] Defendant has not satisfied its burden to show that accommodating Reddick would have resulted in undue hardship. Consequently, summary judgment is not proper on plaintiff's failure to accommodate claim.

### b.    Discriminatory Discharge

Defendant also moves for summary judgment on plaintiff's discriminatory discharge claim. When a plaintiff's Title VII claim is challenged on summary judgment, the plaintiff may "avert

---

[8]Additionally, M. Aldred testified that if Reddick's crown "looked unkempt, he would have been asked to wear a hairnet over it because of serving food." (DE at 69).

summary judgment through [one of] two avenues of proof." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005) (internal alteration omitted). A plaintiff may present "direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as . . . [religion] motivated the employer's adverse employment decision." Id. Alternatively, a plaintiff may use the well-known "burden-shifting" proof structure. Id. (internal alteration omitted). See generally McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Here, plaintiff has not presented any direct or circumstantial evidence of discrimination and, thus, must rely on the burden-shifting framework. Under the McDonnell Douglas approach, plaintiff first must establish a prima facie case of discrimination. Specifically, plaintiff must adduce evidence that Reddick 1) is in a protected group; 2) was discharged; 3) was performing his job at a level that met his employer's legitimate expectations at the time of his discharge; and 4) was discharged under circumstances that raise a reasonable inference of unlawful discrimination. Gerner v. Cnty of Chesterfield, 674 F.3d 264, 266 (4th Cir. 2012).

Once plaintiff establishes these elements, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." Lettieri v. Equant Inc., 478 F.3d 640, 646 (4th Cir. 2007) (internal quotations omitted). If the employer meets this burden, the burden shifts back to the plaintiff to "prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." Reeves v. Sanderson Plumbing Pros., Inc., 530 U.S. 133, 143 (2000). In cases involving alleged religious discrimination, a plaintiff must prove that religion "actually played a role in [defendant's decision making] process and had a determinative influence on [his termination]." Id. at 141 (2000) (internal citations omitted).

Here, plaintiff has not adduced sufficient evidence to establish a prima facie case for discriminatory discharge. Namely, plaintiff fails to produce evidence establishing that Reddick was performing his job at a level that met his employer's legitimate expectations. Plaintiff contends that Reddick performed his job at a level that met his employer's legitimate expectations. However, plaintiff cannot satisfy the element of the prima facie case merely by providing Reddick's self-serving assessment of his work; rather, plaintiff must provide some objective evidence that Reddick's performance met his employer's legitimate expectations. See King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003); see also Evans v. Techs Applications & Serv. Co., 80 F.3d 954, 960–61 (4th Cir. 1996) ("It is the perception of the decision maker which is relevant."). Where, as here, there is witness testimony from defendant's employees asserting Reddick's poor performance, (see DE 68-3 at 7–8, 12, and 21; DE 68-4 at 4–7; DE 68-5 at 6, 8–10; DE 68-7 at 4-7, 13–17, and 19–22), plaintiff must provide some additional evidence, apart from Reddick's own statements, to support its case. See Love-Lane v. Martin, 355 F.3d 766, 787 (4th Cir. 2004) (holding plaintiff created a genuine dispute of material fact on the second element of the prima facie case where "[she] offere[d] evidence. . .that she continued to perform her job at a satisfactory level despite the problems with. . .[her supervisor] and certain teachers"); King, 328 F.3d at 149–50 ("For. . .[plaintiff] to establish that his work met appellee's legitimate job performance expectations he had only to offer qualified expert opinion testimony as to (1) appellee's legitimate job performance expectations and (2) analysis and evaluation of. . .[his] performance in light of those expectations.").

In sum, plaintiff has not demonstrated that Reddick was performing his job duties at a level that met his employer's legitimate expectations. Where plaintiff is lacking an essential element of a discriminatory discharge claim, the court need not consider the parties' additional arguments.

Accordingly, defendant's motion for summary judgment on plaintiff's discriminatory discharge claim is granted.

c. Backpay

In the alternative, defendant contends it is entitled to partial summary judgment on the issue of backpay. Specifically, defendant contends that the after-acquired evidence doctrine limits plaintiff's recovery of backpay. Typically, after-acquired evidence of employee misconduct operates as a defense to limit available backpay relief. McKennon v. Nashville Banner Pub'lg Co., 513 U.S. 352, 357–63 (1995). In McKennon, the Supreme Court held that an employer can invoke the after-acquired evidence doctrine as a defense when it learns of a "wrongdoing [that] was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of discharge." Id. at 362–63. The Court further held that "the trial court's formulation of a remedy should be a calculation of backpay from the date of the unlawful discharge to the date the new information was discovered." Id.

Here, it is undisputed that Reddick was hired as a delivery driver. It is also undisputed that defendant discharged Reddick on December 6, 2013. On September 22, 2014, defendant learned that Reddick had a poor driving record. (DE 75 ¶ 93). Because he had a poor driving record, defendant's insurance company would not have been able to insure Reddick to drive defendant's company vehicles. (Id. ¶ 81). Since this information would have resulted in Reddick's immediate termination, plaintiff's available backpay remedy is limited to the time period from December 6, 2013 to September 22, 2014.

Defendant contends that because it would have sent Reddick's information to the insurance company in December 2013, plaintiff's backpay remedy should be cut off in December 2013.

However, because defendant did not learn about Reddick's driving record until September 22, 2014, that is the trigger date for the backpay cutoff. See id. It is not proper to limit plaintiff's backpay to some arbitrary date in December 2013, when defendant could have, but did not actively, learn of Reddick's driving history.[9]

d.    Punitive Damages

Finally, the court considers, sua sponte, whether defendant is entitled to summary judgment on the issue of punitive damages. In certain circumstances, a district court may grant summary judgment on its own initiative. See Fed. R. Civ. P. 56(f)(3) ("After giving notice and reasonable time to respond, the court may: . . . (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."); see also United States Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n, 873 F.2d 731, 735 (4th Cir. 1989) (indicating that district courts have the inherent power to enter summary judgment). As a prerequisite to exercising this power, a district court must give the losing party sufficient notice and an opportunity to respond. United States Dev., 873 F.2d at 735 ("[The notice] must . . . allow the party a reasonable opportunity to present all material pertinent to the claims under consideration."). Here, where plaintiff was provided an opportunity to present all pertinent material to the issue of damages in response to defendant's motion for summary judgment, plaintiff was afforded "adequate opportunity to demonstrate a genuine issue of material fact [regarding the availability of punitive damages]." Id.

Punitive damages are available under Title VII. See 42 U.S.C. § 1981(a) ("In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 . . . against a respondent who engaged in unlawful intentional discrimination . . . prohibited under section 703,

---

[9]Defendant makes a similar argument on the basis of Reddick's criminal history. Where discussion of Reddick's criminal history does not alter the court's conclusion on available backpay, the court does not address it herein.

704, or 717 of the Act . . . , the complaining party may recover compensatory and punitive damages.").  In claims involving intentional discrimination under Title VII, a prevailing plaintiff "may recover punitive damages upon demonstration that the defendant engaged in a discriminatory practice or discriminatory practices with malice or reckless indifference to his or her federally protected rights."  Lowery v. Circuit City Stores, Inc., 206 F.3d 431, 441 (4th Cir. 2000) (internal quotations omitted).  "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 535 (1999).

However, "[t]he inquiry does not end with a showing of the requisite 'malice or . . . reckless indifference' on the part of certain individuals." Id. (internal quotations omitted).  The plaintiff must also "impute liability for punitive damages to [defendant]." Id. Ordinarily, "an employer may be held vicariously liable for a punitive damage award in a Title VII case for the intentionally discriminatory conduct of its employee, where the employee served the employer in a managerial capacity, committed the intentional discrimination at issue while acting in the scope of employment, and the employer did not engage in good-faith efforts to comply with Title VII." Lowery, 206 F.3d at 442.

Viewing the facts in the light most favorable to plaintiff, there is not sufficient evidence to support imposition of punitive damages in the instant case.  Evidence of record does not contain "sufficient evidence for a reasonable juror to find that in intentionally [failing to accommodate Reddick's religious practice of wearing a crown], the decision maker did so in the face of a perceived risk that [its] decision would violate federal law." Id. at 443.  Furthermore, even if Jenkins and M. Aldred were aware that failing to accommodate Reddick's religious practice of wearing a crown violated federal law, a reasonable juror could conclude that defendant engaged in good faith efforts

24

to comply with Title VII. Significantly, defendant maintains an anti-discrimination policy which prohibits discrimination on the basis of religion. (DE ¶ 3). Additionally, "on many occasions, [defendant] granted [various employees'] . . . requests for religious accommodations." (Id. ¶ 5). Where the record establishes that defendant has made a good-faith effort to comply with Title VII, defendant did not act with malice or reckless indifference to Reddick's federally protected rights. For this reason, the court grants summary judgment to defendant on the issue of punitive damages.

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment, (DE 67), is GRANTED IN PART and DENIED IN PART. Plaintiff's failure to accommodate claim is allowed to proceed. Plaintiff's discriminatory discharge claim is DISMISSED. In addition, plaintiff's motion for partial summary judgment, (DE 65), is GRANTED IN PART and DENIED IN PART. Defendant's affirmative defense that plaintiff has failed to satisfy all conditions precedent is DISMISSED. All remaining affirmative defenses are allowed to proceed. Plaintiff's motion to strike, (DE 77), is also DENIED. Lastly, the court GRANTS summary judgment, sua sponte, to defendant on the issue of punitive damages. Accordingly, plaintiff's claim for punitive damages against defendant are DISMISSED.

SO ORDERED, this the 1st day of March, 2017.


LOUISE W. FLANAGAN
United States District Judge